IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br>     Plaintiff, § <br> § <br> vs. § <br> § <br> MIGUEL ANGEL TREVINO MORALES (1), § <br>     aka "40", § <br> OSCAR OMAR TREVINO-MORALES (2), § <br>     aka "42", § <br> JOSE TREVINO-MORALES (3), § <br> ZULEMA TREVINO (4), § <br> CARLOS MIGUEL NAYEN BORBOLLA (5), § <br>     aka "Carlito", § <br>     aka "Pilotos", § <br> FRANCISCO ANTONIO COLORADO CESSA (6), § <br>     aka "Pancho", § <br> FERNANDO SOLIS GARCIA (7), § <br>     aka "Freddy", § <br> VICTOR MANUEL LOPEZ (8), § <br> SERGIO ROGELIO GUERRERO RINCON (9), § <br>     aka "El Negro", § <br>     aka "El Saltillo", § <br> ADAN FARIAS (10), § <br> EUSEVIO MALDONADO HUITRON (11), § <br> FELIPE ALEJANDRO QUINTERO (13), § <br> RAUL RAMIREZ (14), § <br> LUIS GERARDO AGUIRRE (15), § <br> ERICK JOVAN LOZANO DIAZ (16), § <br> GERARDO GARZA QUINTERO (17), § <br> JESUS MALDONADO HUITRON (18), § <br>     aka "Jesse", and § <br> ALEXANDRA GARCIA TREVINO (19), § <br>     Defendants. § | Criminal No. A-12-CR-210-SS |

**UNITED STATES' DISCLSOURE OF EXPERT WITNESSES**

NOW COMES the United States of America ("the Government"), by and through the

U.S. Attorney for the Western District of Texas, and submits this Disclosure of Expert Witnesses

pursuant to the Court's standing pretrial order, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence. In support thereof, the Government respectfully offers the following:

## I. MEMORANDUM ON LAW ENFORCEMENT TESTIMONY

"The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods of operation unique to the drug distribution business, as such testimony is often helpful in assisting the trier of fact understand the evidence." *United States v. Buchanan*, 70 F.3d 818, 832 (5th Cir. 1996) (quoting *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995)); *see also United States v. Parsee*, 178 F.3d 374, 379 (5th Cir. 1999); *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997) (holding that a law enforcement agent may explain jargon utilized by drug dealers including the tendency to refer to ordinary items of commerce in lieu of illegal narcotics or to use abbreviations for prices of drugs). Experts in narcotics investigations may testify regarding the meaning of code or slang words such as "13-5," for "$13,500," or "30" for a "$30,000 shipment of marijuana," or a "5 price" used to indicate "$500 a pound." *Burton v. United States*, 237 F.3d 490, 499-500 (5th Cir. 2000); *Griffith*, *supra*.

Courts have consistently held that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi. *United States v. Gil*, 58 F.3d 1414, 1422 (9th Cir. 1995); *United States v. Fleishman*, 684 F.2d 1329, 1335-36 (9th Cir. 1982) (finding no error in the admission of law enforcement agents' testimony that defendant acted as a "lookout" for a drug transaction). In *Buchanan* (a case that originated out of the Western District of Texas), the Fifth Circuit found that: "**Because of their experiences, the officers were familiar with certain conduct and methods of operation unique to the drug distribution business . . . .**" *Id.* at 832 (emphasis added).

"Such evidence helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." *United States v. Vallejo*, 237 F.3d 1008, 1016 (9th Cir. 2001); *United States v. Johnson*, 735 F.2d 1200, 1202 (9th Cir. 1984). "The methods by which drug dealers attempt to conceal their activities 'is not something with which most jurors are familiar.'" *United States v. Gibson*, 105 F.3d 1229, 1235 (8th Cir. 1997); *United States v. Boykin*, 986 F.2d 270, 275 (8th Cir. 1993); *United States v. Daniels*, 723 F.2d 31, 33 (8th Cir. 1983). For example, a detective could testify as an expert regarding the significance of extensive phone traffic between a defendant and members of an alleged drug ring. *United States v. Brewer*, 1 F.3d 1430 (4th Cir. 1993).

Furthermore, case law distinguishes between expert testimony that requires a scientific predicate and that which a witness may offer based solely on the witness's experience and training. When expert testimony is "entirely descriptive rather than based on empirical study of any sort," the Federal Rules of Evidence do not require anything more than the district court's satisfaction that a particular witness's experience and training have equipped the witness to provide reliable testimony. *Lawson v. Trowbridge*, 153 F.3d 368, 375-76 (7th Cir. 1998) (holding that rules designed to prevent the admission of "junk science" (usually referred to as "Daubert rules") did not apply in a situation in which law enforcement officers offered expert testimony regarding non-scientific matters). For example, the Ninth Circuit has embraced the notion that Daubert rules apply to all expert testimony, yet has conceded that the rules should not apply "[i]n the context of a government agent's testimony on the modus operandi of narcotics traffickers." <u>United States v. Bighead</u>, 128 F.3d 1329, 1335 (9th Cir. 1997). Since the Supreme Court announced the Daubert rules in 1993, several Circuits have implicitly acknowledged that they do not apply to law enforcement officers' expert testimony regarding matters such as the

structure, jargon, or modus operandi of criminal organizations when the officers possess the requisite experience and training. *See, e.g., Burton*, 237 F.3d at 499-500 (holding that a federal agent's expert testimony explaining slang terms for drugs was admissible); *United States v. Quintana*, 70 F.3d 1167, 1171 (10th Cir. 1995) (stating that "in narcotics cases, expert testimony can assist the jury in understanding transactions and terminology").

The courts have also upheld the admission of expert testimony concerning the membership, structure and nature of organized crime groups, their terminology, rules and modus operandi. *See United States v. Saccoccia*, 58 F.3d 754, 774-76 (1st Cir. 1995); *United States v. Locascio*, 6 F.3d 924, 936-59 (2d Cir. 1993); *United States v. Pungitore*, 910 F.2d 1084, 1148-49 (3d Cir. 1990); *United States v. Angiulo*, 897 F.2d 1169, 1187-90 (1st Cir. 1990); *United States v. Angiulo*, 847 F.2d 956, 973-75 (1st Cir. 1988); *United States v. Daly*, 842 F. 2d 1380, 1387-89 (2d Cir. 1988); *United States v. Riccobene*, 709 F.2d 214, 230-31 (3d Cir. 1983).  In *Pungitore*, a Special Agent with the FBI was permitted to testify regarding the structure of the organization and explain the meaning of crime jargon and coded language used by the co-conspirators in intercepted conversations.  In addition, the Special Agent was allowed to identify individuals in photographs as substantial figures and associates from New York crime families meeting with various defendants.  *Pungitore*, 910 F.2d at 1148.  The agent identified the crime family members and whether they held office in the labor union.  *Id.*

In addition to the above-stated purposes of such expert testimony, the court in *Daly* recognized that trial courts may also admit such evidence in order to provide background for the events alleged in the indictment.  This background evidence may help establish the circumstances surrounding the events in the indictment or may help furnish an explanation of the understanding or intent under which certain actions were performed.  *Id.*

## II. DISCLOSURE OF EXPERT WITNESSES

Regardless of whether the below-listed witnesses' testimony comes within the scope of FED. R. EVID. 702, the Government provides these witness summaries out of an abundance of caution.

**A.      Jose Garza, Homeland Security Director**
         Kansas City Southern Railroad

Based on his knowledge, training, and experience, Mr. Garza will testify regarding the organization/structure, jargon, methods, and tactics utilized by *Los Zetas* (a Mexican drug cartel) in its operations of drug trafficking, extortion, bribery, and money laundering.  Mr. Garza is nationally recognized as a subject matter expert on Southwest Border Violence, Mexican Drug Cartels, and gangs associated with the Cartels.

Mr. Garza has been employed by the Texas Department of Public Safety (DPS) and the Federal Bureau of Investigation (FBI) for approximately 29 years.  During his career, Mr. Garza has conducted narcotics investigations, worked as an intelligence analyst, and worked to establish links between drug and currency seizures.  For the past five years, Mr. Garza has been employed by the Kansas City Southern Railroad as the Director of Homeland Security.  His duties include serving as the FBI-Joint Terrorism Task Force (JTTF) Drug Squad and Railroad Liaison between the railroad, the American Association of Railroads, and federal agencies.

Mr. Garza has provided training to federal, state, and local law enforcement officers through numerous lectures at FBI conferences, the National Drug Intelligence Center, Financial Center Money Laundering conferences, and Organized Crime Drug Enforcement Task Force (OCDETF) conferences regarding the Cartels organization/structure, jargon, methods, and tactics.

**B.     William Johnston, Special Agent**
       Drug Enforcement Administration

William Johnston is a Special Agent of the United States Drug Enforcement Administration (DEA) within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

Agent Johnston has been a Special Agent with the DEA since November 20, 2009. Agent Johnston received five months of training drug investigation and related legal matters at the DEA Training Academy in Quantico, Virginia. As a Special Agent for the Drug Enforcement, Agent Johnston has conducted investigations which have involved Drug Trafficking Organizations and their elements of financiers, manufactures, distributors, and money launderers. Agent Johnston has also acquired information and knowledge about the illegal drug trade from interaction with informants, defendants, and other experienced narcotics investigators. In connection with Agent Johnston's duties as a Special Agent, Agent Johnston has testified in judicial proceedings and prosecutions for violations of laws concerning controlled substances.

Agent Johnston has received courses of instruction from DEA relative to the investigative techniques and the conducting of drug and financial investigations. Agent Johnston has participated in and conducted investigations which have resulted in the arrests of individuals who have smuggled, received and distributed controlled substances, including marijuana, cocaine, heroin, and methamphetamine, as well as the seizure of illegal drugs and proceeds of the sale of those drugs via seizures, wiretap affidavits, search warrants, etc. In addition, Agent Johnston has conducted, in connection with these and other cases, follow up investigations concerning the concealment of drug produced assets, money, bank records, etc., and the identification of drug

conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

Agent Johnston has participated in investigations involving the interception of wire communications and the use of email correspondences as ways of communication. Agent Johnston is familiar with the ways in which drug traffickers conduct their business, including but not limited to, their methods of importing and distributing drugs, their use of cellular telephones, email correspondences, and their use of numerical codes words to conduct their illegal transactions.

**C.	Scott Lawson, Special Agent**
	Federal Bureau of Investigation

Based on his knowledge, training, and experience, Special Agent Lawson will testify regarding the organization/structure, jargon, methods, and tactics utilized by *Los Zetas* (a Mexican drug cartel) in its operations of drug trafficking, extortion, bribery, and money laundering.

Special Agent Lawson became a certified peace officer in the State of Tennessee in 2005. Beginning as a patrol officer in the Rutherford County, Tennessee Sheriff's Department, SA Lawson was promoted to Criminal Investigative Division-Interstate Crime Enforcement/Narcotics Interdiction. As a state peace officer, SA Lawson was involved in numerous multi-jurisdiction investigations and testified in both state and federal courts.

Special Agent Lawson became a Special Agent for the FBI in 2009 and was assigned to the Laredo, Texas Resident Office. Since 2009, approximately 95% of the investigations conducted by Special Agent Lawson have involved narcotics trafficking, money laundering, extortion, illegal gambling, etc. the majority of which involved activities of Los Zetas given the proximity of their territory to Laredo.

**D.     Steve Pennington, Special Agent**
        Internal Revenue Service, Criminal Investigations

Special Agent Pennington will testify about his opinion that the defendants were laundering drug proceeds through the horse industry. Agent Pennington has been employed at the IRS for 28 years and has testified as an accounting expert in financial crime cases in federal and state court. Throughout his IRS career, Agent Pennington has conducted criminal investigations and participated in the prosecution of individuals for money laundering (in violation of 18 U.S.C. §§ 1956, 1957), for the manufacture and distribution of illegal controlled substances (in violation of 21 U.S.C. § 841), and for conspiracy to manufacture and distribute illegal controlled substance (in violation of 21 U.S.C § 846).

SA Pennington has an accounting degree and a business administration degree with an emphasis on money and banking from Northwestern Oklahoma State. He joined the Internal Revenue Service in 1984 as a revenue agent receiving training in tax law and audits. In March 1985, SA Pennington transferred to the Criminal Investigations Division of the IRS. He attended Basic Law Enforcement and Special Agent Financial Training at the Federal Law Enforcement Training Center, in Glynco, GA. He has attended numerous continuing professional education courses in financial investigations. He has testified on numerous occasions in federal and state courts as an expert in financial crimes. His opinion is based on a review of the financial records, seized evidence and witness interviews involved in this case, including but not limited to, records maintained by banks, horse sale companies, farms that board horses, and trainers.

**E.     Billy Williams, Special Agent**
        Internal Revenue Service, Criminal Investigations

Agent Williams will testify about his opinion that the defendants were structuring their bank transactions to evade detection. Agent Williams has been employed at the IRS for 21 years

(including the last seven years as a Special Agent) and has testified as an accounting expert in financial crime cases in federal and state court. As a criminal investigator, Agent Williams has conducted criminal investigations and participated in the prosecution of individuals for money laundering (in violation of 18 U.S.C. §§ 1956, 1957), for the manufacture and distribution of illegal controlled substances (in violation of 21 U.S.C. § 841), and for conspiracy to manufacture and distribute illegal controlled substance (in violation of 21 U.S.C § 846). He has attended numerous continuing professional education courses in financial investigations. He has testified on numerous occasions in federal courts as an expert in financial crimes. His opinion is based on a review of the financial records, seized evidence and witness interviews involved in this case, including but not limited to, records maintained by banks, horse sale companies, farms that board horses, and trainers.

**F.     Michael Fernald, Special Agent**
Internal Revenue Service, Criminal Investigations

Agent Fernald will testify about his financial analysis of the defendants' banking records and his opinion that such records fail to demonstrate the cash flow needed to support the ongoing transactions and expenses related to the horse industry. Agent Fernald has been employed at the IRS for 10 years and has previously testified before this Court as an accounting expert in a financial crime case. He has a Bachelors and Masters degree in Accounting from the University of Texas and is a Certified Public Accountant since 2003. He has performed 40 hours per year of continuing accounting education courses to maintain his certification. His opinion is based on a review of the financial records involved in this case, including but not limited to, records maintained by banks and companies related to the defendants. He has attended numerous continuing professional education courses in financial investigations. He has testified on various occasions in federal courts as an expert in financial crimes. His opinion is based on a review of

the financial records, seized evidence and witness interviews involved in this case, including but not limited to, records maintained by banks, horse sale companies, farms that board horses, and trainers.

**G.    Charles Cox, Forensic Examiner**
Federal Bureau of Investigation, Computer Analysis Response Team (FBI-CART)

Mr. Cox will testify about the process employed and results obtained in "imaging" the contents of the computers and other electronic storage devices found at various locations and the application of the Forensic Tool Kit (FTK) software in analyzing the contents of the various electronic media.

Mr. Cox has over fifteen years of experience and training with computer and network technology. He also has over fourteen years of law enforcement experience with the FBI that includes work as a Special Agent (1998-2005) and as a forensic examiner (2002-2005, 2007-present). Mr. Cox has also received instructional courses as well as specific training in the area of computer forensic analysis.

His certifications include becoming a certified FBI-CART Forensic Examiner (2002), a FBI Certified Instructor (2009), and a FBI Certified GPS Examiner (2012). During his law enforcement career, he has analyzed over 1,000 pieces of computer media in support of criminal investigations and has participated in the execution of more than 100 search warrants and seizure operations. He has previously provided expert testimony in federal court.

**H.    David Weiss, Forensic Examiner**
Federal Bureau of Investigation

Mr. Weiss will testify about the process employed and results obtained in "imaging" the contents of the computers found at Defendant Jose Trevino-Morales's residence in Lexington, Oklahoma.

Mr. Weiss has 29 years of experience and training with computer and network technology with the FBI.  He has served as a Forensic Examiner for over eight years.  Mr. Weiss has received instructional courses as well as specific training in the area of computer forensic analysis.  His certifications include FBI-CART Forensic Examiner, Senior Forensic Examiner, Apple Forensic Examiner, and Linux Forensic Examiner.

**I.     Butch Wise, Manager**
       Lazy E Ranch

Butch Wise is the Manager of the Lazy E Ranch.  The Lazy E Ranch opened in 1984 and is involved in both the Quarter Horse and Thoroughbred racing and breeding industries. Approximately 1500 horses pass through the Lazy E Ranch gates each year and, in 2013, the Lazy E will breed approximately 900 mares and foal out over 150 mares.

The Lazy E Ranch prepares between 450 to 500 head of sale horses each year and represents them at various sales throughout the United States. The Lazy E is located on two ranch sites, the breeding facility and the training center with yearling farm. The breeding facility includes a 65,000 square foot mare barn, 116 stalls, 2 foaling stalls, an indoor arena, 40 individual stalls with adjoining runs, turn out paddocks, the capability to accommodate 120 mares and 14 stallions. The training center has housing for 120 sale prep horses in three 40 stall barns. The yearling farm has a 36 stall barn along with pastures and paddocks for weanlings, yearlings and year round resident mares.

Based on his knowledge and experience, Mr. Wise will testify regarding the jargon, methods, sales, valuations and operations utilized in the American quarterhorse industry.  Mr. Wise is widely respected in the horse industry.  He currently manages the Lazy E Ranch, which is one of the foremost equine facilities in the nation and has been doing so for in excess of 20

years. Mr. Wise is responsible for raising, conditioning, and marketing yearlings, broodmares, and stallions sold at public auction and privately throughout the Southwest.

### III.   REQUEST FOR RECIPROCAL EXPERT DISCLOSURE

Pursuant to FED. R. CRIM. P. 16(b)(1)(C), the Government requests reciprocal disclosure of any expert witness(es) that defendants plan to call at trial.

ACCORDINGLY, the United States of America provides these expert witness disclosures and respectfully request reciprocal disclosure from the defendants.

>
> Respectfully submitted,
>
> ROBERT PITMAN
> United States Attorney
>
> By: *[signature: Douglas W. Gardner]*
>
> DOUGLAS W. GARDNER
> Assistant United States Attorney
> 816 Congress Avenue, Suite 1000
> Austin, Texas  78701
> (512) 916-5858 / fax (512) 916-5854
> State Bar No. 24007223

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of April, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Attorney for Defendant<br>   Jose Trevino Morales (3) | David M. Finn<br>Milner & Finn<br>2828 N. Harwood Street<br>   Suite 1950, LB9<br>Dallas, TX   75201 |
| Attorneys for Defendant<br>   Zulema Trevino (4) | F. Clinton Broden or<br>   Franklyn R. Mickelsen, Jr.<br>Broden & Mickelsen<br>2600 State Street<br>Dallas, TX   75204<br><br>Gabriel Reyes<br>The Law Office of Gabriel Reyes<br>2600 State Street<br>Dallas, TX   75204 |
| Attorneys for Defendant<br>   Carlos Miguel Nayen Borbolla (5) | Mario J. Flores<br>The Law Office of Mario Flores, PLLC<br>314 E. Highland Mall Blvd. #208<br>Austin, TX   78752<br><br>Frank A. Rubino<br>Frank A. Rubino Esq. PA<br>1001 Brickell Bay Dr., Suite 2206<br>Miami, FL   33131 |
| Attorneys for Defendant<br>   Francisco Antonio Colorado Cessa (6) | Mike DeGuerin or<br>   M. Andres Sanchez-Ross<br>Foreman, DeGuerin & DeGuerin<br>300 Main Street, 3rd Floor<br>Houston, TX   77002 |
| Attorneys for Defendant<br>   Fernando Solis Garcia (7) | Guy L. Womack or Geoff L. Womack<br>Guy L. Womack & Associates, PC<br>402 Main Street, Suite 6 North<br>Houston, TX   77002 |

| Attorney for Defendant Adan Farias (10) | Daniel H. Wannamaker<br>Attorney at Law<br>P.O. Box 2271<br>Austin, TX   78768 |
|---|---|
| Attorney for Defendant<br>   Eusevio Maldonado Huitron (11) | Richard D. Esper<br>Esper Law Office<br>801 N. El Paso Street, 2nd Floor<br>El Paso, TX   79902 |
| Attorney for Defendant<br>   Felipe Alejandro Quintero (13) | Gerardo S. Montalvo<br>The Montalvo Law Firm, PLLC<br>100 Congress Ave., Suite 2000<br>Austin, TX   78701 |
| Attorney for Defendant Raul Ramirez (14) | Robert R. Harris<br>Law Office of Robert R. Harris<br>521 Texas Ave.<br>El Paso, TX   79901 |
| Attorney for Defendant<br>   Jesus Maldonado Huitron (18) | Thomas Brent Mayr<br>Law Office of Brent Mayr, PC<br>4101 Washington Ave., 2nd Floor<br>Houston, TX   77007 |
| Attorney for Defendant<br>   Alexandra Garcia Trevino (19) | Frank T. Ivy<br>Law Office of Frank T. Ivy<br>P.O. Box 5986<br>Austin, TX   78763 |

*[signature]*

DOUGLAS W. GARDNER
Assistant United States Attorney